FILED

DEC -5 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. **5:24 CR 00456** |
| MARK JOHN BUSCHMAN, | ) ) | Title 18, United States Code, Sections 371, 554, 922(a)(1)(A), 922(k), 924(a)(1)(B), |
| Defendant. | ) ) | 924(a)(1)(D), 1001(a)(2), and 2 |

GENERAL ALLEGATIONS    **JUDGE OLIVER**

At all times relevant to this Indictment:

1. Defendant MARK JOHN BUSCHMAN was a United States citizen and a resident of South Carolina and Wisconsin. Defendant did not possess a Federal Firearms License from the Bureau of Alcohol, Tobacco, Firearms, and Explosives; an export license issued by the United States Department of State, Directorate of Defense Trade Controls ("DDTC"); or an export license issued by the Department of Commerce.

**The Arms Export Control Act, International Traffic in Arms Regulations, and United States Munitions List Prior to March 9, 2020**

2. The export of defense articles, including arms, ammunition, and implements of war, from the United States was governed by the Arms Export Control Act ("AECA"), Title 22, United States Code, Section 2778, and the International Traffic in Arms Regulations ("ITAR"), Title 22, Code of Federal Regulations, Parts 120-130.

3. The AECA authorized the President, among other things, to control the export of "defense articles" deemed critical to the national security and foreign policy interests of the United

States. The AECA also authorized the President to designate items as "defense articles," require licenses for the export of such articles and promulgate regulations for the export of such articles. By executive order, the President delegated this authority to the United States Department of State, Directorate of Defense Trade Controls ("DDTC"). Accordingly, the DDTC promulgated regulations under the AECA, which were known as the International Traffic in Arms Regulations ("ITAR").

4. The ITAR implemented the provisions of the AECA and established the framework for regulating the export of defense articles. The ITAR defined an "export" as the sending or taking of a defense article out of the United States in any manner. The ITAR defined a "defense article" to be any item on the United States Munitions List ("USML"). The ITAR contained the USML.

5. Persons desiring to export defense articles and services specified on the USML from the United States were required to register with the DDTC and obtain individual export licenses for each shipment abroad prior to the export, as set forth in Title 22, Code of Federal Regulations, Sections 122 and 123. At all times relevant to this Indictment, it was illegal to export or attempt to export defense articles on the USML without a license or written authorization from the DDTC.

6. Prior to March 9, 2020, the USML included non-military firearms, receivers, barrels, and other parts and accessories for non-automatic and semi-automatic firearms chambered in .50 caliber and smaller. On January 23, 2020, the Department of State promulgated a final rule that revised the USML. Effective March 9, 2020, non-military firearms, receivers, barrels, and other parts and accessories for non-automatic and semi-automatic firearms chambered in .50 caliber and smaller were removed from the USML.

7. At no time did Defendant apply for or receive a license or written authorization from the DDTC to export any items listed on the USML, including but not limited to firearms, receivers, barrels or any other parts and accessories for non-automatic and semi-automatic firearms chambered in .50 caliber and smaller.

**The Export Control Reform Act and the Commerce Control List After March 9, 2020**

8. The Export Control Reform Act of 2018 ("ECRA") provided at 50 U.S.C. § 4811(2), among its stated policy objectives, that "the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specific activities of United States persons, wherever located, be controlled. . . ." To that end, ECRA granted the President the authority "(1) to control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. 50 U.S.C. § 4812. ECRA further granted the Secretary of Commerce the authority to establish the applicable regulatory framework.

9. Pursuant to that authority, the Department of Commerce ("DOC") reviewed and controlled the export of certain items, including commodities, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"), 15 C.F.R. Parts 730-774. In particular, the EAR restricted the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR imposed licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully re-exported from one foreign destination to another. "Export" was defined in the EAR as an "actual shipment or transmission out of the United States." 15 C.F.R. § 734.13(a)(1).

10. The most sensitive items subject to EAR controls are identified on the Commerce Control List, or "CCL," published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL were categorized by Export Control Classification Number ("ECCN"), each of which has export control requirements depending on destination, end use, and end user.

11. Pursuant to ECRA, "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of this part or of any regulation, order, license, or other authorization issued under this part," and, "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act" shall be guilty of a crime. 50 U.S.C. § 4819.

12. On January 23, 2020, the Department of Commerce published a final rule that added non-military firearms, receivers, barrels, and other parts and accessories for non-automatic and semi-automatic firearms chambered in .50 caliber and smaller to the CCL administered by the Department of Commerce, effective March 9, 2020. After March 9, 2020, these items could not be exported from the United States without a license or written approval from the Department of Commerce.

13. At no time did Defendant apply for or receive a license or written authorization from the Department of Commerce to export any items listed on the CCL, including but not limited to firearms, receivers, barrels or any other parts and accessories for non-automatic and semi-automatic firearms chambered in .50 caliber and smaller.

### USPS Nonmailable Items

14. Section 1715 of Title 18, United States Code, provided that "[p]istols, revolvers, and other firearms capable of being concealed on the person are nonmailable and shall not be deposited in or carried by the mails or delivered by any officer or employee of the Postal Service."

Section 921(a)(3) of Title 18, United States Code, defined "firearm" to include "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" and "the frame or receiver of any such weapon." United States Postal Service ("USPS") Publication 52, Section 431.1(a) used the same definition of "firearm."

COUNT 1
(Conspiracy to Smuggle Goods from the United States, 18 U.S.C. § 371)

The Grand Jury charges:

15. The factual allegations of Paragraphs 1 through 14 of this Indictment are realleged and incorporated by reference herein.

16. From in or around February 2019 to in or around December 2024, the exact dates to the Grand Jury being unknown, in the Northern District of Ohio, Eastern Division and elsewhere, Defendant MARK JOHN BUSCHMAN, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree together, with each other, and with diverse other persons, to commit an offense against the United States, to wit: to fraudulently and knowingly export and send from the United States any merchandise, article or object contrary to Title 22, United States Code, Section 2778; Title 22, Code of Federal Regulations, Sections 120-130; Title 50, United States Code, Section 4801-4852; and Title 15, Code of Federal Regulations, Parts 730-744, which are laws and regulations of the United States, in violation of Title 18, United States Code, Section 554.

OBJECTS OF THE CONSPIRACY

17. The objects of the conspiracy were to enrich Defendant through the unlawful sale and export of firearms and firearms parts to co-conspirators in Saudi Arabia; to provide firearms

and firearms parts to co-conspirators in Saudi Arabia; and to avoid detection of the firearms and firearms parts shipments by law enforcement authorities.

## MANNER AND MEANS

18. It was part of the conspiracy that:

    A. Defendant obtained firearms and firearms parts in the United States;

    B. Defendant advertised firearms parts for sale on eBay and other websites;

    C. Defendant agreed to sell firearms and firearms parts to co-conspirators in Saudi Arabia;

    D. Defendant concealed firearms and firearms parts in common household appliances and tools, such as toasters, coffee makers, space heaters, fans, belt sanders, and edge/weed trimmers;

    E. Defendant removed the serial numbers from firearms and firearms parts he was shipping;

    F. Defendant shipped firearms and firearms parts concealed in household appliances and tools, garden tools, automobile parts, and other items to freight forwarding companies in the United States, including in the Northern District of Ohio, New Jersey, Oregon, and elsewhere using the USPS, without declaring that the shipments contained firearms and firearms parts;

    G. Defendant used a fictitious return address when shipping packages using the USPS;

    H. Defendant used tracking numbers to check with USPS on the status of firearms shipments to freight forwarding companies;

6

I. Co-conspirators in Saudi Arabia provided the destination address in Saudi Arabia and payment for shipment to Saudi Arabia to the freight forwarding companies;

J. Co-conspirators in Saudi Arabia provided payment to Defendant for the firearms and firearms parts;

K. During the course of the conspiracy, co-conspirators in Saudi Arabia paid Defendant at least approximately $398,000;

L. Defendant and his co-conspirators did not disclose the shipment of firearms or firearms parts from the United States to the United States government; and

M. Defendant and his co-conspirators did not obtain the licenses or written approvals that were required to export the firearms and firearms parts alleged herein from the Department of State prior to March 9, 2020, or from the Department of Commerce after March 9, 2020.

## OVERT ACTS

19. In furtherance of the conspiracy, and to effect the object and conceal the existence thereof, Defendant and others performed overt acts in the Northern District of Ohio, Eastern Division, and elsewhere, including, but not limited to, the following:

20. On or about the following dates, each mailing constituting a separate overt act, Defendant mailed the following firearms and firearms parts concealed in the following items to freight forwarders at the following locations in the United States for reshipment to co-conspirators in Saudi Arabia:

| Mailing Date | Firearms/Firearms Parts | Item Used to Conceal Parts | Freight Forwarder Location |
|---|---|---|---|
| (a) January 8, 2020 | Rifle Stock | Tower Fan/Heater | Akron, Ohio |
| (b) January 13, 2020 | Pistol Slides and Grips | Belt Sander | Akron, Ohio |
| (c) January 14, 2020 | Two Smith & Wesson pistol receivers with obliterated serial numbers, magazines, barrels, and springs | Toaster | Akron, Ohio |
| (d) January 22, 2020 | Rifle Stock | Tower Fan | Portland, Oregon |
| (e) March 27, 2020 | Seven Firearms Parts | Toaster | Bear, Delaware |
| (f) April 22, 2020 | Rifle Barrel | Automobile Front Drive Axle | Springfield Gardens, New York |
| (g) April 23, 2020 | Two Rifle Barrels | Pole Saw | New Castle, Delaware |
| (h) May 6, 2020 | Trigger Assembly, Magazine Assembly, and Bolt Assembly | Coffee Maker | Portland, Oregon |
| (i) May 6, 2020 | Rifle Bolt, Magazine Assembly, and Trigger Assembly | Toaster | Portland, Oregon |
| (j) May 11, 2020 | Rifle Receiver with obliterated serial number, Barrel, and Trigger Assembly | Weed Edge Trimmer | Saddle Brook, New Jersey |
| (k) May 19, 2020 | Two Rifle Barrels | Pole Saw | Portland, Oregon |
| (l) July 22, 2020 | Rifle Barrel | Automobile Steering Pinion | Springfield Gardens, New York |
| (m) September 2, 2020 | Rifle Receiver with obliterated serial number, Barrel, and Trigger Assembly | String Trimmer | Wallington, New Jersey |
| (n) October 5, 2020 | Three Firearms Parts | Camshaft Installation Spacing Tool | Wilmington, Delaware |
| (o) October 5, 2020 | Rifle Barrel | Automobile Axle | Hawthorne, California |
| (p) August 16, 2024 | Rifle Bolt Handle and Bolt Sleeve/Cap | Automobile Starter | New Castle, Delaware |

All in violation of Title 18, United States Code, Section 371.

8

## COUNT 2
(Attempted Smuggling Goods from the United States, 18 U.S.C. §§ 554 and 2)

The Grand Jury further charges:

21. The allegations of paragraphs 1, 6-11, and 20(c) of this Indictment are re-alleged and incorporated by reference herein.

22. From in or around January 2020 to in or around February 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MARK JOHN BUSCHMAN attempted to fraudulently and knowingly export and send firearms, to wit: two Smith and Wesson handgun receivers with obliterated serial numbers, from the United States to Saudi Arabia, contrary to Title 22, United States Code, Section 2778, and Title 22, Code of Federal Regulations, Sections 120-130, laws and regulations of the United States, in violation of Title 18, United States Code, Sections 554 and 2.

## COUNT 3
(Transporting and Shipping Firearm with Removed, Obliterated, or Altered Serial Number, 18 U.S.C. §§ 922(k) and 924(a)(1)(B))

The Grand Jury further charges:

23. The factual allegations of Paragraphs 1 and 20(c) of this Indictment are realleged and incorporated by reference herein.

24. On or about January 14, 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MARK JOHN BUSCHMAN knowingly transported and shipped in interstate commerce from South Carolina to Akron, Ohio firearms, that is two Smith and Wesson handgun receivers from which the manufacturer's serial number had been removed, altered, and obliterated, in violation of Title 18, United States Code, Sections 922(k) and 924(a)(1)(B).

## COUNT 4
(Mailing Firearms as Nonmailable Prohibited Items, 18 U.S.C. § 1715)

The Grand Jury further charges:

25. The factual allegations of Paragraphs 1 and 20(c) of this Indictment are realleged and incorporated by reference herein.

26. On or about January 14, 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MARK JOHN BUSCHMAN knowingly caused to be delivered by mail according to the direction thereon a pistol, revolver, or other firearm capable of being concealed on the person, to wit: two Smith and Wesson handgun receivers with obliterated serial numbers, in violation of Title 18, United States Code, Section 1715.

## COUNT 5
(Unlawful Dealing in Firearms Without a License, 18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D))

The Grand Jury further charges:

27. The factual allegations of Paragraphs 1 and 20 of this Indictment are realleged and incorporated by reference herein.

28. From in or around February 2019 to in or around December 2024 in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MARK JOHN BUSCHMAN, not being a licensed importer, licensed manufacturer, or licensed dealer of firearms, did willfully engage in the business of dealing in firearms and in the course of such business shipped, transported, and received any firearm in interstate commerce, in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1)(D).

COUNT 6
(False Statement to Law Enforcement, 18 U.S.C. § 1001(a)(2))

The Grand Jury further charges:

29. The factual allegations of Paragraphs 1 and 20(c) of this Indictment are realleged and incorporated by reference herein.

30. On or about October 1, 2024, in the Western District of Wisconsin and in a matter affecting the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MARK JOHN BUSCHMAN knowingly and willfully made materially false, fictitious and fraudulent statements to a United States Postal Inspector in a matter within the jurisdiction of the executive branch of the government of the United States, that is,

    a. when asked by a United States Postal Inspector: "But who would've put these items inside of the toaster?" referring to the handgun receivers, magazines, barrels, and springs described in paragraph 20(c), Defendant stated: "I can't tell you that. I do not know;" and

    b. when asked by a United States Postal Inspector: "So if, if we were ever able to restore these serial numbers, they would not come back to you?" referring to the obliterated serial numbers on the handgun receivers described in paragraph 20(c), Defendant stated: "They shouldn't. I don't know how they would,"

when in truth and fact, as Defendant well knew, those statements to the United States Postal Inspector were false, in violation of Title 18, United States Code, Section 1001(a)(2).

## FORFEITURE

The Grand Jury further charges:

31. The allegations of Counts 1 through 5 are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d)(1); Title 18, United States Code, Section 981(a)(1)(C); and Title 28, United States Code, Section 2461(c). As a result of the foregoing offenses, Defendant MARK JOHN BUSCHMAN shall forfeit to the United States any and all firearms and ammunition involved in or used in the commission of the violations charged herein and all property, real and personal, which constitutes, or is derived from, proceeds traceable to the commission of the foregoing offenses.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.